372 A.2d 930

**COMMONWEALTH of Pennsylvania**

v.

**Harold G. DIMITRIS, Sr., Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 23, 1976.

Decided April 19, 1977.

Reargument Denied May 10, 1977.

---

488

Alan N. Linder, Pittsburgh, and Wayne G. Hummer, Jr., Lancaster, for appellant.

Louise G. Herr, Assistant District Attorney, and D. Richard Eckman, District Attorney, Lancaster, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

These appeals are consolidated for convenience. However, because they have different procedural histories, and because our disposition of them is not the same, we shall discuss them separately.

### Indictments Nos. 1104, 1283, and 1284

On September 28, 1973, appellant was convicted, after trial before a jury, of burglary and larceny, corrupting the morals of a minor, and filing a false criminal report. No post-verdict motions were filed, and on December 14, 1973, appellant was sentenced. On January 14, 1974, he appealed to this court. While this appeal was pending he filed a petition for relief under the Post-Conviction Hearing Act [1] in which he alleged that his trial counsel had been ineffective. On December 17, 1974, with the assistance of PCHA counsel, appellant filed a supplemental PCHA petition. Meanwhile, on December 11, 1974, this court decided appellant's appeal. *Commonwealth v. Dimitris*, 231 Pa.Super. 469, 331 A.2d 701 (1974). Because appellant had not been advised of his right to file post-verdict motions, Pa.R.Crim.P. 1123(c), we remanded the case to the trial court to allow appellant to file such motions *nunc pro tunc.*

1. Act of Jan. 25, 1966, P.L. (1965) 1580, effective March 1, 1966, 19 P.S. §§ 1180–1 *et seq.* (Supp.1976).

At this stage it would have been the proper course for appellant to file post-verdict motions, and, if they were denied, appeal to this court *nunc pro tunc*. Instead, on January 31, 1975, the lower court informed appellant of his right to file post-verdict motions and to appeal from the denial of them, and then proceeded at once to hear appellant's PCHA claims. On February 6, 1975, appellant did file post-verdict motions, but according to the lower court's opinion in the PCHA proceedings these motions have never been argued or decided.

■ ■ Ordinarily, the failure to file an appeal or to pursue an appeal once it has been filed compels a finding that the claims in question have been waived, under § 1180–4(b)(1) of the PCHA Act. *See Commonwealth v. Beatty*, 236 Pa.Super. 137, 344 A.2d 591 (1975). Here, however, it would not be accurate to say that appellant did not pursue his appeal: since the trial court has never ruled on his post-verdict motions, he has had no order to appeal from. Furthermore, aside from boiler-plate motions, his post-conviction motions are roughly equivalent to the claims advanced and decided in the PCHA proceeding from which the present appeal is taken. We therefore conclude that it is both fair and efficient to consider those claims now, as if appellant and the lower court had followed correct procedure.

Appellant claims that his trial counsel was ineffective because he did not request a hearing on appellant's competency to stand trial.[2] In support of this claim appellant offered the following evidence at his PCHA hearing: On July 28, 1973, while incarcerated in Lancaster County Prison pending trial, he "lost all feelings and all desire to live" and "couldn't handle it anymore," and therefore "just started cutting away at [him]self" with his razor blade. More than one hundred sutures were required to close the wounds appellant thus inflicted on himself. On August 1, 1973, a prison physician wrote the lower court that appellant had

2. Because of our disposition of this claim we do not reach appellant's other claims.

attempted suicide, and recommended that appellant be given a psychiatric examination. At the same time the prison warden filed a petition for commitment of appellant to a mental institution.

Opposing this evidence was the report of two other prison physicians who, at the court's request in response to the above correspondence, examined appellant and concluded that he was not "mentally disabled" and that his suicide attempt "was an invalid attempt and without true intention." [3]

■ The test to be applied in determining a defendant's competency to stand trial is whether he has the ability (1) to comprehend his position as one accused of the charges in question, and (2) to cooperate with his counsel in making a rational defense. *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 227 A.2d 159 (1967). Here the question is not whether appellant would have passed this test; it is rather only whether his counsel was ineffective for failing to raise the claim that he would not.

■■ First, we must ask whether the claim had arguable merit. *See generally Commonwealth v. Hubbard*, 472 Pa. 259, at 277–278, 372 A.2d 687, at 695–696 (1977) (filed January 28, 1977). On the evidence presented, we cannot conclude that the claim was baseless, or patently frivolous, or (to look at it from the other direction) that it might not have offered a "potential for success substantially greater than the tactics actually utilized." *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 605 n. 8, 235 A.2d 349, 353 n. 8 (1967). Appellant's infliction on himself of injuries—whether or not it was a "[ ]valid" suicide attempt—was sufficiently serious to provoke two recommendations for further investigation of his mental state: the first physician's letter to the court, and the warden's petition for commitment. It is true that

---

**3.** It should be noted that none of the above correspondence with the court directly related to appellant's upcoming trial. There is no indication in the record that the judge who was to preside at appellant's trial was made aware of the attempted suicide or of the reports concerning it.

an examination led two physicians to conclude that appellant was not "mentally disabled." However, that conclusion simply shows a difference of opinion; it does not so far outweigh the initial evidence of mental disorder as to show that the claim of incompetency did not have arguable merit.[4]

Having determined that appellant's claim had arguable merit, we must next decide whether appellant's trial counsel had a reasonable basis for his decision not to advance the claim in the lower court, *Commonwealth v. Hubbard, supra,* 472 Pa. at 259, 372 A.2d at 687.

At the PCHA hearing, appellant's trial counsel testified that he had learned of appellant's self-inflicted injuries sometime before trial, but that the possibility had not occurred to him that appellant might be incompetent to stand trial. He also testified that "some things [appellant] has done have shown great instability,"[5] and that "Mr. Dimitris didn't seem to be completely rational." Also, the following appears:

Q. Do you think he understood what was going on, do you think this is why there were all these questions [referring to appellant's repeated interruptions during voir dire]?

A. I think he understood very well what was going on. I think he had elusions [*sic*; "delusions"?] and, of course, this isn't particularly to Mr. Dimitris, he run the risk in this case.

**4.** This is particularly so since the two physicians who had concluded that appellant was not mentally disabled were not psychiatrists but osteopaths. The lower court emphasized that the first physician, who recommended a psychiatric examination, was also an osteopath. Even without his recommendation, however, there was sufficient evidence of mental disorder, *viz.* the details of the injuries (one hundred sutures) and the warden's petition for commitment of appellant, to alert counsel that appellant's competency should be questioned.

**5.** Counsel elaborated on this statement as follows: "[S]ome things he has done have shown great instability *and some in mind has shown great candidness.*" We cannot understand the latter half of this sentence.

Given this testimony, we are at a loss to imagine what reasonable basis counsel could have had for not contesting appellant's competency. The statement, "I think he understood very well what was going on," suggests that counsel had concluded that appellant was competent. There is no indication, however, of how counsel arrived at that conclusion, if in fact he did. A finding of "reasonable basis" cannot be made solely on the strength of counsel's statement that he thought appellant competent when there is no explanation of why he thought so. Especially is this the case when the suggestion that counsel thought appellant competent is contradicted by other statements by counsel, as that appellant had shown "great instability," "didn't seem to be completely rational," and "had [d]elusions."

██ The order and judgment of sentence are reversed and a new trial ordered.[6]

6. To hold a hearing now on the question of appellant's competency to stand trial in 1973 would not be sufficient safeguard of his due process rights. In a seminal case in this area, the United States Supreme Court was urged to prescribe such a remedy. The Court said:

[W]e have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record. That [the defendant's] hearing would be held six years after the fact aggravates these difficulties. *Pate v. Robinson*, 383 U.S. 375, 387, 86 S.Ct. 836, 843, 15 L.Ed.2d 815 (1966).

As to the Court's first point—the opportunity to observe the subject—this case is different from *Pate*. In Illinois, by statute, the question of a defendant's competence is for the jury; here it is for the judge. *See Com. ex rel. Hilberry v. Maroney, supra*. It might therefore be suggested that the judge who presided at appellant's trial could *now* make an adequate assessment of appellant's competency *then*. We are not persuaded, for two reasons.

First, the question of competency was never raised, and so the judge had no reason to make particular observations of appellant with this question in mind. Second, almost four years have passed since trial; we do not think we should rely on a memory so old.

Furthermore, there were in this case no medical examinations of appellant by psychiatrists at or about the time of trial. Thus there is no "information contained in the . . . record" on which experts

*Indictments Nos. 1285, 1286, 1287*

Appellant pleaded guilty to counts of sodomy, contributing to the delinquency of a minor, and violation of the Liquor Code. Because he took no appeal following sentencing, and because on this PCHA proceeding he has made no attempt to justify his failure to appeal, he has waived the claims that he now advances. *Commonwealth v. Blair*, 463 Pa. 383, 344 A.2d 884 (1975).

The order is affirmed.

VAN der VOORT, J., notes his dissent as to indictments Nos. 1104, 1283, and 1284.

could base their testimony at a competency hearing held now. On this point the present case is stronger than *Pate.*

This latter point distinguishes the present case from cases in which our Supreme Court has ordered an evidentiary hearing on remand to determine an appellant's competency in the past. *See Commonwealth v. Marshall*, 456 Pa. 313, 318 A.2d 724 (1974) (psychiatric examinations held eight months before and one month after trial); *Commonwealth v. Davis*, 455 Pa. 596, 317 A.2d 211 (1974) (defendant transferred to Farview State Hospital prior to sentencing, and remained there for seven and one-half years); *Com. ex rel. Hilberry v. Maroney*, 417 Pa. 534, 207 A.2d 794 (1965) (examinations by four physicians for purpose of degree-of-guilt hearing; subsequent report by a "commission in lunacy"); *and see Commonwealth v. Smith*, 227 Pa.Super. 355, 324 A.2d 483 (1974) (report of examination of defendant for purposes of pre-trial competency hearing).