Commonwealth *v.* Marshall, Appellant.

Argued April 24, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY AND MANDERINO, JJ.

*T. D. Watkins,* with him *Robert B. Mozenter, Paul Leo McSorley, Marino & Mozenter,* and *McSorley & McSorley,* for appellant.

*Benjamin H. Levintow,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE MANDERINO, April 23, 1974:

The appellant, Eugene Marshall, allegedly shot his estranged wife in full view of several eyewitnesses on December 26, 1967. In August of 1968, prior to trial, he was given a psychiatric examination which was ordered by the trial court. The report of that examination stated that the appellant was competent to stand trial but stated "[i]t is recommended that the subject be seen weekly by a psychiatrist in order to allow him to continue to function well, *with the understanding that under prolonged stress, he may in fact, deteriorate and become a quite ill individual. Some psychiatric chemotherapy or counseling seems indicated at this time for him to maintain adequate functioning.*" (Emphasis added.)

Six weeks later, on October 1, 1968, prior to trial, defense counsel requested funds to hire a psychiatrist. This request was denied. The appellant's trial began a few weeks later, on October 28, 1968. Following appellant's conviction in a jury trial of second degree murder, post-verdict motions were filed. While these motions were pending, the trial court ordered a psychiatric examination for sentencing purposes. Court psychiatrists examined the appellant in October of 1969, and submitted a report to the trial court. This second psychiatric report apparently confirmed the expected deterioration of the appellant's condition indicated in the first psychiatric report made prior to trial—fourteen months earlier. This second report diagnosed the appellant as a "Schizophrenic Reaction, Paranoid Type, Acute," and recommended "Incarceration in the Institute for Criminally Insane at Farview." The report stated: "It appears that since his incarceration *his past defenses have decompensated to the extent that he now only has a tenuous contact with reality,* is preoccupied with the physical complaint and somatic delusions, fanatically influenced by bizarre religiosity and engages in private conversation with God." (Emphasis added.)

About eight months after the second psychiatric report was submitted, the trial court, on June 12, 1970, ordered a new trial because of error in the trial court's charge to the jury. The error was not related to the appellant's mental competency. When the new trial was ordered, the trial court also granted defense counsel's request for permission to withdraw from the case. The trial court said that new counsel would be appointed and also said that another psychiatric examination of the appellant would be ordered.

New counsel was appointed two weeks later but another psychiatric examination was not ordered. New defense counsel made no request at any time for any psychiatric examination and raised no question about

appellant's mental competency before or during the second trial, although he did request, prior to trial, that he be permitted to withdraw because he was not receiving any cooperation from the appellant in preparing a defense. That request was denied. The record is not clear as to whether new defense counsel knew about the appellant's two previous psychiatric examinations which had occurred prior to his appointment. The prosecution's brief assumes that the first report was given to former defense counsel "because it is the practice in our courts," but concedes that the second psychiatric report which recommended the appellant's commitment to Farview was not in the appellant's files since it had been prepared for sentencing purposes prior to the grant of a new trial.

The appellant was released on bail on September 3, 1970, and remained at liberty until his conviction about six months later. During that time, he returned to his former employment as a stock clerk and a taxi driver.

The appellant's second trial began on February 22, 1971, about eight months after the appointment of new defense counsel. During the trial, no evidence was presented by the defense. The appellant was convicted by a jury of second degree murder on February 24, 1971. Post-verdict motions were filed without raising any issues about the appellant's mental competency. While these motions were pending, the trial court ordered a psychiatric examination for sentencing purposes. The examination took place on March 23, 1971, *one month after the appellant's conviction.* The diagnostic formulation in the report of that examination said "[t]his man is best seen at this time *as continuing* in a Schizophrenic Reaction of the Paranoid Type with inappropriate affect, delusional ideation and apparently hallucinatory phenomenon of a religious nature." (Emphasis added.) The report recommended that "[t]his man's

interest would best be served by incarceration at Far-
view State Hospital where he can receive chemotherapy
and group therapy and possibly individual therapy un-
til his condition improves." The report also said the
appellant "displayed poor judgment in refusing to be
tested even though it was pointed out to him that he
was actually in contempt of court by so doing but, he
affably and inappropriately acknowledged that that was
the case and it was obvious that *he was in reality un-
able to understand or fully appreciate his situation be-
cause of the degree of his present illness.*" (Emphasis
added.)

After this report was submitted, while post-verdict
motions were still pending, defense counsel raised the
question of the appellant's mental competency to stand
trial. During argument on post-verdict motions, on
September 10, 1971, about six months after the appel-
lant's third psychiatric examination, the following col-
loquy occurred between the trial court and defense
counsel: "THE COURT: It would seem to me, [defense
counsel], that some testimony would have to be sub-
mitted. The Court just could not take your evaluation
of the defendant's ability to fully appreciate and under-
stand the nature and consequences of the proceeding.
[Defense Counsel]: Yes, and it is within Your Honor's
discretion to have a hearing with regard to whether or
not the defendant was in fact competent at the time.
THE COURT: It is your duty to offer evidence, psychi-
atric or otherwise. [Defense Counsel]: Yes, sir, I would
intend to do that, sir, if Your Honor would allow me
to do that. It is discretionary with the Court whether
or not Your Honor would allow me. There is a case
that indicated that it is within the Court's discretion
to allow that type of proceeding, that type of hearing.
THE COURT: Is that cited? [Defense Counsel]: Yes,
sir, I think it is, sir. THE COURT: Then perhaps I bet-
ter let the Commonwealth reply to your brief, and con-

tinue the matter." After the above colloquy, the trial court questioned the appellant before continuing the matter.

At a conference in chambers held on October 19, 1971, the trial court noted that the briefs filed had been considered and requested that the appellant submit to another psychiatric examination. Ten days later, the appellant was examined. This was the fourth psychiatric examination by court psychiatrists. The report of the court psychiatrist which was submitted on November 18, 1971, stated "[o]n the basis of the information obtained during this interview, I cannot conclude anything other than the fact that Mr. Marshall is at best Schizoid and *is at the present moment* quite capable of defending himself." (Emphasis added.) The report, however, did not make any evaluation of the appellant's mental competency at the time of his second trial, eight months before this last examination. No hearing was held after the submission of this last report, but on December 22, 1971, post-verdict motions were denied and the appellant was sentenced to a term of five to fifteen years imprisonment. This appeal followed.

The appellant claims that the trial court erred in concluding that "[t]here was no factual basis to support defendant's contention that he was incompetent to stand trial. . . ." The appellant asks that we conclude, on the basis of the record before us, that the appellant was denied due process of law because he was tried in February of 1971 while he was mentally incompetent. We cannot, however, on the record before us, grant the appellant's request nor can we affirm the trial court's denial of post-verdict motions. We cannot grant appellant's request because, during the nine month period between the second and third psychiatric examinations, the appellant was out on bail for a period of six months and returned to his former employments. We cannot

affirm the trial court because, without holding an evidentiary hearing, it erroneously concluded that there was no factual basis to the appellant's claim. The second and third psychiatric examinations, held eight months before and *one month after the appellant's second trial,* raise serious doubts about the appellant's mental competency during that second trial. The report of the fourth examination does not contradict the findings of those earlier examinations. We are thus unable, on this record, to arrive at a final determination concerning the appellant's mental competency during his second trial. The matter must be remanded for an evidentiary hearing. *See Commonwealth v. Davis,* 455 Pa. 596, 317 A. 2d 211 (1974); *cf. Commonwealth ex rel. Hilberry v. Maroney,* 417 Pa. 534, 207 A. 2d 794 (1965).

"[T]he mental competence of an accused must be regarded as an absolute and basic condition of a fair trial." *Commonwealth v. Bruno,* 435 Pa. 200, 205 n. 1, 255 A. 2d 519, 522 n. 1 (1969). "[T]he conviction of an accused person while he is legally incompetent violates due process . . . and . . . state procedures must be adequate to protect this right." *Pate v. Robinson,* 383 U.S. 375, 378, 15 L. Ed. 2d 815, 818, 86 S. Ct. 836, 838 (1966); *see Commonwealth v. Ragone,* 317 Pa. 113, 176 A. 454 (1935).

The failure of the appellant's counsel to raise the issue of the appellant's mental competency prior to or during the appellant's trial did not constitute a waiver by the appellant. "[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly and intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate v. Robinson,* 383 U.S. 375, 384, 15 L. Ed. 2d 815, 821, 86 S. Ct. 836, 841 (1966). The issue, therefore, was properly raised in post-verdict motions and is properly before us.

The record is remanded for an evidentiary hearing to determine whether the appellant was mentally competent to stand trial.

Mr. Chief Justice JONES and Mr. Justice NIX took no part in the consideration or decision of this case.