393 A.2d 686

**COMMONWEALTH of Pennsylvania**

v.

**Renard HUNT, Appellant.**

Superior Court of Pennsylvania.

Argued April 10, 1978.

Decided Oct. 20, 1978.

Morton B. DeBroff, Pittsburgh, for appellant.

Leo M. Dillon, Assistant District Attorney, with him Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

HOFFMAN, Judge:

Appellant requests that our Court order an evidentiary hearing to determine whether he was competent to stand

trial. We grant this request and remand for proceedings consistent with this opinion.

On March 16, 1973, a Corapolis, Allegheny County, police officer arrested appellant and charged him with robbery,[1] receiving stolen goods,[2] and assault and battery with intent to kill.[3] The charges stemmed from a robbery of a taxicab driver and an ensuing attack on the victim with a five inch paring knife. When appellant failed to post bail, he was placed in the Allegheny County jail.

On April 23, 1973, Allegheny County authorities charged appellant with prison breach,[4] assault by a prisoner,[5] holding a hostage,[6] and aggravated assault and battery.[7] The complaint alleged that on April 22, 1973, appellant accosted a prison guard, held a five inch piece of glass to his throat, inflicted a wound, and ordered the guard to open the prison gate. After subduing appellant, prison authorities placed him in the jail hospital under full restraint.

On April 27, 1973, Duncan Campbell, a staff psychiatrist with the Allegheny County Behavior Clinic, interviewed appellant and wrote a report in which Dr. Campbell stated that appellant needed some restriction because of his dependence on drugs, particularly heroin and amphetamines. While recognizing that appellant suffered from a personality disorder and a dependency on drugs, Dr. Campbell opined that appellant was not "grossly mentally ill." Dr. Campbell concluded that appellant should be judged according to the evidence.

1. The Penal Code, Act of June 24, 1939, P.L. 872, § 705; 18 P.S. § 4705.

2. The Penal Code, supra; 18 P.S. § 4817.

3. The Penal Code, supra; 18 P.S. § 4710.

4. The Penal Code, supra; 18 P.S. § 4309.

5. The Penal Code, supra; 18 P.S. § 4710.1.

6. The Penal Code, supra; 18 P.S. § 4723.1.

7. The Penal Code, supra; 18 P.S. § 4709.

4

In September, 1973, prison officials, concerned that appellant might be psychotic because of his strange behavior,[8] asked the Behavior Clinic to conduct another psychiatric examination. On September 18, 1973, Dr. Robert Bowman, a staff psychiatrist, examined appellant and filed a report. Dr. Bowman observed many manifestations of disturbed behavior which suggested that appellant had extremely tenuous control over himself. Dr. Bowman concluded that ". . . we are dealing with a clear cut paranoid individual at the present time who is apparently regressing. I will continue to follow him. If the picture remains unchanged, some consideration must be given to transfer to a state hospital for treatment." Dr. Bowman did not forward his report to the Allegheny County Court of Common Pleas.

On October 2, 1973, appellant's non-jury trial commenced in the Allegheny County Court of Common Pleas. Neither appellant nor his trial counsel raised any question concerning appellant's competency to stand trial. According to the trial judge, who recorded his observations in an opinion written four years after trial, appellant ". . . appeared at all times to be coherent and lucid while listening to the testimony as well as when he testified." The trial court found appellant guilty on all charges and immediately sentenced him to the following terms of imprisonment: 7½ to 15 years for robbery, 2½ to 5 years for assault and battery with intent to kill, 5 to 10 years for holding a hostage, 5 to 10 years for prison breach, and 5 to 10 years for assault by a prisoner; all these sentences were to run consecutively. The court suspended sentence on the charges of aggravated assault and battery and receiving stolen goods.

After trial, appellant obtained new counsel. On October 9, 1973, this attorney filed timely written post-verdict motions which asserted, *inter alia*, that the lower court erred in not ordering a psychiatric examination to determine appellant's competency to stand trial and that trial counsel was ineffective for not requesting such an examination.

8. This concern originated when appellant persistently complained that prison authorities had inserted fecal material in his food.

On November 5, 1973, counsel filed an application for modification or vacation of appellant's sentences on the basis of appellant's history of psychiatric problems. Counsel also requested the lower court to order an examination by two psychiatrists; the court granted this request.

On November 20, 1973, Dr. Bowman again interviewed appellant and filed another report. Dr. Bowman noted that since the September 18, 1973 interview, appellant's behavior had continued to be bizarre and indicative of paranoid schizophrenia. Appellant also could not accurately relate details of his personal history, including his age or the length of the recently imposed sentences. Inconsistencies in his narration indicated a breakdown in his cognitive processes. Dr. Bowman emphasized that appellant, at that time, was an extremely dangerous individual who posed a security risk in the state penitentiary. Because the therapeutic atmosphere of a state hospital might reduce tensions, Dr. Bowman recommended that appellant be hospitalized at Farview State Hospital.

On December 6, 1973, a second psychiatrist, Dr. Berry, examined appellant and found him to be "obviously mentally ill and dangerous to others." Dr. Berry recommended extended hospitalization. On December 14, 1973, the lower court, on the basis of these two psychiatric reports, vacated appellant's sentence and committed appellant to Farview State Hospital for a period not to exceed 50 years; the court specifically premised this order on a finding that appellant's mental disability required in-patient institutional treatment.

From December 14, 1973, until October 7, 1976, appellant remained at Farview State Hospital. Psychiatric staff evaluations during this period revealed that appellant suffered from a chronic schizophrenic condition and organic deficiencies due to past drug intoxication; appellant made little headway in overcoming these problems. Nevertheless, on September 10, 1976, a staff evaluation recommended that appellant be considered for return to a state penitentiary, at least on a trial basis. While appellant had ". . . shown [no] . . . appreciation of the nature of his disability,

. . .", his illness had undergone "minor modifications", and appellant had expressed a desire to return to a penitentiary setting. Accordingly, on October 7, 1976, the lower court ordered appellant transferred to the Allegheny County jail to await further disposition.

On November 9, 1976, appellant's counsel requested a deferral of re-sentencing until the completion of another psychiatric examination; the court granted this request. On January 24, 1977, Dr. Elliott Shinn, a psychiatrist retained by appellant's counsel, forwarded a psychiatric report to the lower court in which he made the following diagnosis: "Chronic Schizophrenic Reaction with paranoid delusions complicated by organic brain damage (probably due to drug usage)." On the question of appellant's competency to stand trial on October 2, 1973, Dr. Shinn found some hints in the record that appellant did not fully understand the proceedings, but also noted that a diagnosis of paranoid schizophrenia, standing alone, did not mandate a finding of incompetence. In sum, Dr. Shinn found the evidence available to him inconclusive on the issue of appellant's competency to stand trial. In the dispositional portion of his report, Dr. Shinn recommended that appellant be placed in a mental hospital or a closed penal institution. Dr. Shinn cautioned that if appellant were released into society in the near future, he would almost certainly resume his drug habit and become grossly psychotic as well as potentially dangerous. Dr. Shinn concluded that appellant's illness could only be controlled, not cured.

On February 22, 1977, the lower court, after denying appellant's post-verdict motions,[9] resentenced appellant to the following consecutive terms of imprisonment: 7½ to 15 years for robbery, 2½ to 5 years for assault and battery with

---

9. Appellant's counsel filed supplemental written post-verdict motions on November 12, 1976. These motions asserted, inter alia, that the trial court erred in conducting a trial when appellant was mentally incompetent, that appellant had not received effective assistance of counsel, and that the Commonwealth had failed to divulge evidence of appellant's paranoid schizophrenia to appellant's counsel or family.

intent to kill, 3 to 6 years for holding a hostage, 3 to 6 years for prison breach, and 3 to 6 years for assault by a prisoner; these sentences run consecutively and total 19–38 years imprisonment. The lower court suspended sentence on the aggravated assault and battery and receiving stolen goods charges. This appeal followed the lower court's denial of appellant's motion for reconsideration of sentence.

Appellant contends that we should remand the instant case for an evidentiary hearing to determine whether he was competent to stand trial on October 2, 1973. In *Commonwealth v. Kennedy*, 451 Pa. 483, 487, 305 A.2d 890, 892 (1973), our Supreme Court summarized the standards for determining when a defendant is incompetent to proceed to trial:

"It has long been established that a mentally incompetent person cannot be required to stand trial. Cf. *Commonwealth v. Scovern*, 292 Pa. 26, 140 A. 611 (1927). It is equally well established the person asserting mental incompetence to stand trial has the burden of proving incompetency by a preponderance of the evidence. Cf. *Commonwealth v. Carluccetti*, 369 Pa. 190, 85 A.2d 391 (1952); *Commonwealth v. Simanowicz*, 242 Pa. 402, 89 A. 562 (1913).

"In *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 227 A.2d 159 (1967), we pertinently stated the following with respect to what the defendant must establish: '[T]he test to be applied in determining the legal sufficiency of his mental capacity to stand trial or enter a plea at the time involved, is not the M'Naghten "right or wrong" test, but rather his ability to comprehend his position as one accused of murder and to cooperate with his counsel, in making a rational defense. See *Commonwealth v. Moon*, [383 Pa. 18, 117 A.2d 96 (1955),] and *Commonwealth ex rel. Hilberry v. Maroney*, supra, 417 Pa. at 544, 207 A.2d 794. Or stated another way, did he have sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and have a rational as well as factual understanding of the proceedings against him. See *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d

824 (1960). Otherwise, the proceedings would lack due process: *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).' Id. at 495, 227 A.2d at 160. See also *Commonwealth v. Harris*, 431 Pa. 114, 243 A.2d 408 (1968)." See also *Commonwealth v. Harper*, 479 Pa. 42, 387 A.2d 824 (1978); *Commonwealth v. Dimitris*, 247 Pa.Super. 486, 372 A.2d 930 (1977).

In *Commonwealth v. Marshall*, 456 Pa. 313, 318 A.2d 724 (1974), our Supreme Court, confronted with facts closely analagous to those involved in the case at bar, remanded for an evidentiary hearing to determine whether the defendant was mentally competent at the time of trial. In *Marshall*, a psychiatrist examined the defendant two months before his homicide trial and concluded that although he was competent to stand trial, his situation could deteriorate if he were subjected to prolonged stress and did not receive psychiatric counselling. Following Marshall's conviction on October 28, 1968, the trial court ordered a psychiatric examination for sentencing purposes. In a report submitted one year after trial, a psychiatrist diagnosed Marshall as "Schizophrenic Reaction, Paranoid Type, Acute" and recommended commitment to Farview State Hospital. Eight months later, the trial court ordered a new trial for reasons not related to the defendant's mental competency. After posting bail, Marshall returned to his former employment as a stock clerk and taxi driver. On February 24, 1971, his second trial began; a jury convicted Marshall of second degree murder. Once again, the lower court ordered a psychiatric examination for sentencing purposes. On March 23, 1971, a psychiatrist submitted a report which concluded that ". . . this man is best seen at this time as *continuing* in a Schizophrenic Reaction of the Paranoid Type with inappropriate affect, delusional ideation and apparently hallucinatory phenomena of a religious nature." (Supreme Court added emphasis). The report recommended commitment to Farview State Hospital. When defense counsel then raised the issue of his client's competency to stand trial, the lower court ordered another psychiatric examination. This report, submitted on November 18, 1971, stated that ". . . Mr. Marshall . .

*is at the present moment* quite capable of defending himself." (Supreme Court added emphasis). However, the report failed to evaluate Marshall's mental competency at the time of his second trial, eight months before his last examination. Nevertheless, the lower court found no factual basis to support a claim of mental incompetency at the time of the second trial and refused to hold a hearing.

On appeal, our Supreme Court remanded the case for an evidentiary hearing to determine Marshall's competency to stand trial. Specifically, the court stated:

"The appellant claims that the trial court erred in concluding that '[t]here was no factual basis to support defendant's contention that he was incompetent to stand trial. . . .' The appellant asks that we conclude, on the basis of the record before us, that the appellant was denied due process of law because he was tried in February of 1971 while he was mentally incompetent. We cannot, however, on the record before us, grant the appellant's request nor can we affirm the trial court's denial of post-verdict motions. We cannot grant appellant's request because, during the nine month period between the second and third psychiatric examinations, the appellant was out on bail for a period of six months and returned to his former employments. We cannot affirm the trial court because, without molding an evidentiary hearing, it erroneously concluded that there was no factual basis to the appellant's claim. The second and third psychiatric examinations, held eight months before and *one month after the appellant's second trial,* raise serious doubts about the appellant's mental competency during that second trial. The report of the fourth examination does not contradict the findings of those earlier examinations. We are thus unable, on this record, to arrive at a final determination concerning the appellant's mental competency during his second trial. The matter must be remanded for an evidentiary hearing. *See Commonwealth v. Davis,* 455 Pa. 596, 317 A.2d 211 (1974); *cf. Commonwealth ex rel. Hilberry v. Maroney,* 417 Pa. 534, 207 A.2d 794 (1965)." Supra at 318–19, 318 A.2d 726. (Emphasis in original). See also *Commonwealth v. Phillips,* 468 Pa. 400, 364 A.2d 255 (1977);

*Commonwealth v. Smith,* 227 Pa.Super. 355, 324 A.2d 483 (1974).

■ In the instant case, absent an evidentiary hearing and a fuller development of the record, we are unable to evaluate conclusively appellant's competency to stand trial on October 2, 1973. As in *Marshall,* the record contains some significant indications, but no conclusive evidence, that appellant lacked the requisite mental capacity to stand trial. In order to demonstrate the inconclusive state of the record and the necessity of an evidentiary hearing, we shall canvass the facts proffered by appellant to support a conclusion of incompetency as well as the facts adduced by the Commonwealth to support a determination of competency.

Appellant has presented evidence which raises serious doubts about his competency at the time of trial. Only two weeks before trial, a psychiatrist who examined appellant concluded that he was ". . . a clear cut paranoid individual at the present time who is apparently regressing" and who might be in need of treatment at a state hospital in the absence of improvement. The psychiatrist observed that appellant, at best, had extremely tenuous control over himself and acted in a bizarre manner. Seven weeks after trial, the same psychiatrist re-examined appellant and determined that his behavior continued to be aberrational and suggestive of paranoid schizophrenia; he recommended hospitalization at Farview State Hospital. Nine weeks after trial, another psychiatrist interviewed appellant and found him to be "obviously mentally ill and dangerous to others"; he also recommended institutionalization. Finally, on December 14, 1973, the lower court vacated appellant's sentences after specifically finding that appellant suffered from a mental disability requiring in-patient institutional treatment. This continuum of events over only a three month period raises serious questions concerning appellant's mental competency to understand the nature of the charges and proceedings against him and to assist his counsel in the preparation of a defense.

■ In rebuttal, the Commonwealth points to facts in the present record which suggest that appellant may actually

have been mentally competent to stand trial on October 2, 1973. First, a psychiatrist examined appellant five and one-half months before trial and recommended that he be tried according to the evidence.[10] Second, the trial judge observed appellant's demeanor and testimony during the trial and found him to be lucid and coherent; while not conclusive,[11] these observations may be probative on the issue of appellant's mental competency at that time. Third, Dr. Bowman's failure to submit his September 18, 1973 report on appellant's psychiatric condition to the lower court before trial may warrant the inference, drawn by the lower court, that Dr. Bowman found appellant competent to stand trial, despite the indications of paranoid schizophrenia.[12]

10. The lower court's reliance on this report as a conclusive indicator of appellant's competency is unwarranted. In *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966), a psychiatrist examined the defendant two or three months before trial and concluded that the defendant was able to proceed to trial at that time. The Supreme Court recognized that this report constituted *some evidence* of the defendant's ability to aid in his defense, but refused to accord the report *conclusive weight on the issue of competency at a time two or three* months in the future. Obviously, a report written five and one-half months before trial likewise cannot be deemed dispositive on the issue of competency immediately before and during trial. Moreover, as our Court noted in *Commonwealth v. Smith*, supra, we should not uncritically accept conclusions expressed in a psychiatrist's report without some attempt to scrutinize the factual bases underlying the conclusions and the examining psychiatrist's understanding of the relevant legal principles.

11. As the Supreme Court stated in *Pate v. Robinson, supra*: "While Robinson's demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue. Cf. *Bishop v. United States*, 350 U.S. 961, * * * (1955)." *See also Commonwealth v. Dimitris*, 247 Pa.Super. 486, 372 A.2d 930, *supra*, in which we discounted a trial judge's recollections of a defendant's trial demeanor because over four years had passed since trial and the judge had no particular reason to make particular observations of the defendant with the issue of competency in mind.

12. The lower court apparently believed that a staff psychiatrist at the Allegheny County Behavior Clinic has a duty to report a finding of incompetency to the trial court. The record does not reveal the duties of a staff psychiatrist nor the interrelationship between the

Finally, Dr. Shinn's January 24, 1977 report states that a diagnosis of paranoid schizophrenia does not ipso facto render a defendant incompetent to stand trial; appellant may have actually consulted in a rational manner with his trial counsel and may have thereby demonstrated an understanding of the proceedings and an ability to assist in his defense.

In sum, appellant has presented evidence which raises serious questions concerning his competency to stand trial on October 2, 1973. However, the inconclusive state of the present record does not permit a definitive and summary answer to these questions in favor of either appellant or the Commonwealth. Accordingly, we must remand for an evidentiary hearing on appellant's mental competency at the time of trial.[13] If after this hearing, the hearing court determines that appellant was mentally incompetent to stand trial, appellant will be entitled to a new trial. If the hearing court determines that appellant was competent, the judgments of sentence will stand. Following the hearing court's decision, either party may appeal and may raise any issue presented and undecided in the instant appeal.[14] *Commonwealth v. Smith, supra.*

clinic, the courts, and the prison system. At the evidentiary hearing on remand, inquiry into these matters may prove illuminating.

13. Appellant's counsel requests only that we remand for an evidentiary hearing; he does not press an argument that the passage of time prevents an adequate reconstruction of appellant's mental state before and during trial and thus necessitates the grant of a new trial. *See Pate v. Robinson, supra; Commonwealth v. Dimitris, supra.* Therefore, we are not obliged to consider whether appellant is entitled to greater relief than an evidentiary hearing. Moreover, our appellate courts have approved the remedy of an evidentiary hearing, as opposed to an automatic new trial, when psychiatric examinations at or about the time of trial provide a basis for expert testimony at a retrospective competency hearing. *See, e. g., Commonwealth v. Marshall, supra; Commonwealth v. Davis, supra; Commonwealth ex rel. Hilberry v. Maroney, supra; Commonwealth v. Dimitris, supra; Commonwealth v. Smith, supra.* In the instant case, the record contains four psychiatric reports written at or about the time of trial.

14. Appellant has also contended that the offenses for which he was convicted merged, thus precluding separate and consecutive sentences. We do not decide this issue at the present time.

Case remanded for proceedings consistent with this opinion.

The decision in this case was made prior to the retirement of HOFFMAN, J.

PRICE, J., dissents.

VAN der VOORT and HESTER, JJ., dissent. They would affirm the judgment and sentence of the court below.