408 A.2d 483

**COMMONWEALTH of Pennsylvania**

v.

**Paul MEGELLA, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1978.

Filed Aug. 3, 1979.

318

Calvin S. Drayer, Jr., Assistant Public Defender, Chief, Appeals Division, Norristown, for appellant.

Eric J. Cox, Assistant District Attorney, Chief, Appeals Division, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PRICE, Judge:

The instant appeal is from the order of the court below revoking appellant's probation and sentencing him to a term of imprisonment of from six (6) to twelve (12) months on his prior conviction for disorderly conduct.[1] For the reasons stated herein, we affirm the order of the court below.

The facts giving rise to this appeal are as follows. On April 16, 1976, appellant assaulted Kathy Brown in Bridgeport, Montgomery County. He was charged with three offenses—simple assault,[2] recklessly endangering another,[3]

1. 18 Pa.C.S. § 5503.

2. 18 Pa.C.S. § 2701.

3. 18 Pa.C.S. § 2705.

and disorderly conduct. On May 25, 1976, appellant was diagnosed by a physician at the Norristown State Hospital as mentally ill, schizophrenic of the paranoid type with delusions that others were "harassing" him. On June 4, 1976, a hearing was held regarding appellant's capacity to stand trial. Found incompetent, he was committed to the Norristown Hospital for a period of ninety days. Appellant was subsequently adjudged competent, and on October 28, 1976, entered a plea of guilty to the charge of disorderly conduct; the other two charges were nolle prossed as part of the plea agreement. Appellant was sentenced to a one year probation period and ordered to submit to a full-time course of therapy at the Norristown Hospital. Appellant left the hospital after two or three days claiming, "I don't believe I needed treatment in the first place." (N.T. 21, Parole Revocation Hearing). Although this was violative of the terms of his probation, proceedings to revoke the probation were not instituted at that time.

The events giving rise to appellant's subsequent arrest occurred during May of 1977. On May 14, 1977, appellant, a resident of Norristown, was charged with harassment for throwing rocks at the Bridgeport residence of Kathy Brown and her parents. A few days earlier, he had threatened a Mr. William Mashintonio in a bar in Bridgeport. Mr. Mashintonio had testified against appellant in a separate and unrelated case involving an assault upon a police officer. On May 19, 1977, appellant was arrested and, after speaking with his probation officer, was released on May 20. Despite numerous warnings from the probation officer and the chief of police of Bridgeport not to return to that town, appellant returned on May 21, 1977. He stopped Alice Brown, the sister of Kathy Brown, and requested that the Brown family clear his record. He also requested to speak to Kathy Brown and allegedly threatened to kill her. Alice Brown left, under the pretense of summoning her sister, and contacted the police. In the interim, her brother and father arrived and became embroiled in a fist fight with appellant.

Appellant was arrested and charged with violating the terms of his October 28, 1976 probation. On May 24, 1977, a *Gagnon* I hearing was held, *see Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), during which probable cause regarding appellant's violation of probation was established. Also on May 24, 1977, by agreement, a *Gagnon* II hearing was held at which appellant was found to have violated his probation, and he was sentenced as mentioned previously.

Appellant appeals from the order revoking probation and the subsequent sentence and asserts the following errors: (1) the court violated appellant's due process rights when it did not sua sponte order a psychiatric examination to determine if appellant was competent to participate in the *Gagnon* II hearing; (2) appellant was mentally incompetent at the time he committed the acts that constituted a violation of his probation; and (3) the court below abused its discretion when it did not order a psychiatric examination prior to imposing sentence upon appellant. None of these contentions was advanced in the court below, and appellant's counsel never requested that an examination be conducted nor claimed that appellant was incompetent. For the reasons stated herein, we affirm the order and judgment of the court below.

## I

First, we must agree with appellant that a violation of due process results when an incompetent defendant is forced to participate in a criminal proceeding.

" '[T]he mental competence of an accused must be regarded as an absolute and basic condition of a fair trial.' *Commonwealth v. Bruno*, 435 Pa. 200, 205 n. 1, 255 A.2d 519, 522 n. 1 (1969). '[T]he conviction of an accused person while he is legally incompetent violates due process . . . and . . . state procedures must be adequate to protect this right.' *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815, 818 (1966); *see Commonwealth v. Ragone*, 317 Pa. 113, 176 A. 454 (1935).

The failure of the appellant's counsel to raise the issue of the appellant's mental competency prior to or during the appellant's trial did not constitute a waiver by the appellant. '[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly and intelligently "waive" his right to have the court determine his capacity to stand trial.' *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 841, 15 L.Ed.2d 815, 821 (1966). The issue, therefore, was properly raised in post-verdict motions and is properly before us." *Commonwealth v. Marshall*, 456 Pa. 313, 319, 318 A.2d 724, 727 (1974).

*See Commonwealth v. Smith*, 227 Pa.Super. 355, 324 A.2d 483 (1974).

■ Appellant does not, however, specifically claim that he was incompetent to participate in the *Gagnon* II hearing on May 24, 1977. He claims rather, that his due process rights were violated when the court below did not sua sponte order a psychiatric examination to determine if he was incompetent.

Pursuant to section 402 of the Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, §§ 101 et seq., "[t]he court, either on application or its own motion, may order an incompetency examination at any stage in the proceedings . . . ." 50 P.S. § 7402(d). Moreover, in *Commonwealth v. Smith, supra*, we held that "[i]nquiry is therefore wise whenever there arises from the evidence, no matter how presented to the trial judge, a reasonable doubt that the defendant is competent to stand trial." *Id.*, 227 Pa.Super. at 364, 324 A.2d at 488. In both instances, however, the language is advisory rather than mandatory in nature. Thus, although the revocation of probation and subsequent re-sentencing of a defendant who is mentally incapable of participating in the proceeding is a violation of due process, *see Commonwealth v. Marshall, supra; Commonwealth v. Smith, supra*, the failure by a court to sua sponte order a psychiatric hearing is not such a violation. Appellant's first contention is therefore without merit.

## II

■ Appellant next asserts that he was mentally incompetent at the time he committed the acts leading to his parole revocation. Generally, a criminal defendant is presumed to have been sane at the time of the commission of the offense. Once, however, "a defendant offers evidence of his insanity, the presumption falls aside and the Commonwealth has the burden of proving the defendant's sanity beyond a reasonable doubt." *Commonwealth v. Vogel,* 468 Pa. 438, 448, 364 A.2d 274, 279 (1976); *see Commonwealth v. Delker,* 467 Pa. 305, 356 A.2d 762 (1976); *Commonwealth v. Demmitt,* 456 Pa. 475, 321 A.2d 627 (1974).

Instantly, appellant never presented evidence nor raised the issue in the court below that he was insane at the time he committed the acts that were violative of his probation. Moreover, an examination of the record does not reasonably indicate that this was an issue.

Appellant testified at the *Gagnon* II hearing on May 24, 1977, that his decision to terminate treatment at the Norristown Hospital was based upon his assessment that the treatment was ineffective. He further stated that his motive in returning to Bridgeport on May 21, 1977, was to meet with Kathy Brown. He felt that the initial encounter with her, which caused her to file charges against him and thus precipitated his original problems, had been misunderstood. Appellant felt that if only he could meet with her, the problems could be erased, and his record cleared. Moreover, he stated that he never threatened to kill Kathy Brown in his discussion with her sister on May 21. He claimed that the question was posed by Alice Brown as to whether he was going to continue to harass the Brown family until Kathy was killed; appellant responded in the negative. Appellant also gave an extensive recitation of the May 21, 1977 encounter between himself and Kathy's brother and father, and claimed that it was they who had initiated the fight. That explanation was so extensive it lead the court below and the chief of police of Bridgeport to conclude that appellant may have been partially or wholly innocent in

provoking the encounter.  Finally, appellant's probation officer testified at the *Gagnon* I hearing on May 24, 1977, that appellant's problems arose from his perception that the initial charges filed by Kathy Brown were spurious.  He was nevertheless charged with various offenses and therefore undertook a vendetta against those who presented the charges.  The probation officer further testified that after being arrested for throwing stones at the Brown residence, appellant met with him on May 20, 1977, and finally admitted that he had been harassing the Brown family.

▪ In light of the above, we cannot conclude that the evidence was such as to reasonably present the issue that appellant was incompetent at the time he committed the acts violative of his probation.  His failure to continue treatment at the Norristown Hospital was the result of a conscious and deliberate decision;  his excursions to Bridgeport were intentional acts designed to continue his "harassment" or to meet with Kathy Brown;  and his continued harassment of the Browns was, he admitted, merely a continuation of his vendetta.  All three sets of activities were violations of the terms of his probation.  No evidence was presented to imply that at the time of the acts appellant "did not know the nature and the quality of the act or that he did not know" that they were in violation of the terms of his probation.  *Commonwealth v. Demmitt, supra,* 456 Pa. at 483, 321 A.2d at 631;  *see Commonwealth v. Bruno,* 466 Pa. 245, 352 A.2d 40 (1976);  *Commonwealth v. Hamilton,* 459 Pa. 304, 329 A.2d 212 (1974), *cert. denied,* 420 U.S. 981, 95 S.Ct. 1411, 43 L.Ed.2d 663 (1975);  *Commonwealth v. Mosler,* 4 Pa. 264 (1846).  Accordingly, the evidence did not raise the issue of insanity, the presumption prevails and the Commonwealth was not required to assume the burden of proving appellant's sanity beyond a reasonable doubt.

### III

Finally, appellant claims that the court below abused its discretion in not ordering a pre-sentence psychiatric evaluation.  Under Pa.R.Crim.P. 1403(A)(1), "the sentencing judge

may, in his discretion, order a pre-sentence investigation report in any case."

"An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused." *Mielcuszny v. Rosol,* 317 Pa. 91, 93–4, 176 A. 236, 237 (1934).

*See, e. g., Maruccio v. Houdaille Industries, Inc.,* 254 Pa.Super. 560, 386 A.2d 91 (1978); *Commonwealth ex rel. Simmler v. Simmler,* 134 Pa.Super. 339, 4 A.2d 215 (1938).

■ Instantly, we must conclude that the court below did not abuse its discretion for the same reasons mentioned in part II of this opinion. The testimony of the probation officer and especially appellant's testimony in his defense failed to convey the impression that appellant was mentally incompetent. The mere fact that one year earlier, on May 25, 1976, appellant had been recommended for therapy was not such a "red flag" that the court below was warned that a timely psychiatric report was mandated. Because the evidence was not so overwhelming as to indicate the necessity for such a report, the court below did not abuse its discretion for failing to order the report absent a request by appellant. Further, the records of the original trial and of these hearings clearly establish that full reports on appellant's record and background were available and used by the trial court in its sentencing procedure. *See Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977).

Order and judgment of the lower court affirmed.

HOFFMAN and SPAETH, JJ., concur in the result.

CERCONE, President Judge, files a concurring opinion.

JACOBS, former President Judge, did not participate in the consideration or decision of this case.

CERCONE, President Judge, concurring:

While I am in accord with Parts II and III of Judge Price's carefully reasoned opinion, I must, nevertheless, concur only in the result reached in Part I.

In my opinion, the appellant *is not* contending for a prophylactic rule which would require in *all probation revocation* hearings that a trial judge order a psychiatric examination to determine the competency of the accused before conducting a *Gagnon II*. On the contrary, he argues that the nature of the crimes, which led to his probation revocation hearing and his "ramblings" on the stand at this hearing, "should have been a signal to the trial judge to order a psychiatric evaluation to determine if appellant were well enough to participate in his own defense." The appellant further reasons that these circumstances created a reasonable doubt concerning his ability to understand and cooperate in the *Gagnon II* proceeding.

When such a contention has been raised on appeal in other contests, both our Supreme Court and this court have examined the record to evaluate the merits of the defendant's claim. If the record initially revealed *serious doubts* concerning the defendant's competency, the reviewing court proceeded to ascertain whether the record conclusively established the accused's incompetency. Where the record has not permitted such a judgment either a remand for an evidentiary hearing was ordered, *see Commonwealth v. Marshall*, 456 Pa. 313, 318 A.2d 724 (1974); *Commonwealth v. Davis*, 455 Pa. 596, 317 A.2d 211 (1974); *Commonwealth ex rel. Hilberry v. Maroney*, 417 Pa. 534, 207 A.2d 794 (1965); *Commonwealth v. Hunt*, 259 Pa.Super. 1, 393 A.2d 686 (1978); See also *Commonwealth v. Phillips*, 468 Pa. 400, 364 A.2d 255 (1977); *Commonwealth v. Smith*, 227 Pa.Super. 355, 324 A.2d 483 (1974), or a new trial was granted *in unique circumstances* where a remand hearing would not suffice to meet the demands of due process.

In the instant case, appellant has not come forward with evidence which definitely raises *serious doubts* about either his ability to comprehend the nature of the charges and

proceedings against him or his ability to assist his counsel in preparation for and during his *Gagnon II* hearing. Accordingly, since the evidence adduced at the *Gagnon I* and *II* hearings failed to cast *serious doubts* on appellant's competency, the learned trial judge committed no error when he did not sua sponte order a psychiatric examination to determine if the accused was incompetent. See *Commonwealth v. Hunt*, 259 Pa.Super. at 1–12, 393 A.2d at 687–691.