485 A.2d 821

**COMMONWEALTH of Pennsylvania**

v.

**Trina GARNETT, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 5, 1984.

Filed Dec. 14, 1984.

Petition for Allowance of Appeal Denied June 23, 1985.

314

Joseph Branca, Assistant Public Defender, Media, for appellant.

Vram Nedurian, Jr., Assistant District Attorney, Media, for Commonwealth, appellee.

Before CIRILLO, OLSZEWSKI and MONTGOMERY, JJ.

OLSZEWSKI, Judge:

This appeal follows denial of appellant's petition for relief under the Post Conviction Hearing Act.

On August 29, 1976, two children died in a fire at 1138 Spruce Street, Chester. Investigation by the Pennsylvania State Police Fire Marshal revealed that the fire had been

set. As a result of their investigation, the Chester police filed criminal complaints against appellant, then age 14. The girl was bound over, following a preliminary hearing, on charges of criminal homicide-murder, criminal homicide, burglary, conspiracy-homicide, criminal mischief, recklessly endangering another person, causing a catastrophe and arson. Appellant was tried as an adult on all counts. Jury trial commenced on March 14, 1977. Verdicts of guilty were returned on two charges of second degree murder, on burglary, arson, recklessly endangering another person, and risking and causing a catastrophe. Counsel filed boilerplate post-verdict motions. Those post-verdict motions denied, appellant was sentenced to concurrent terms of life imprisonment, to be followed at the close of the life terms, by an additional twenty to forty years imprisonment. No direct appeal was taken.

Appellant makes four allegations of ineffective assistance by counsel. She first charges that counsel was ineffective for failing to obtain an independent determination of her competency to stand trial and for failing to challenge her certification as competent to stand trial.

Conviction of an accused while she is legally incompetent violates due process. *Pate v. Robinson,* 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966); *Commonwealth v. Knight,* 276 Pa.Super. 348, 357, 419 A.2d 492, 496 (1980) (and cases cited therein). Incompetence to proceed on criminal charges is defined by statute. "Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate or assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues." 50 P.S. § 7402(a). Appellant was found incompetent by three psychiatrists, competent by a fourth. On the weight of that last evaluation, she proceeded to trial and conviction.

The PCHA court found that appellant had presented no evidence to establish that she was in fact incompetent to stand trial in March of 1977.[1] It concluded, "without such

1. Dr. Shulkin, the court-appointed psychiatrist at the PCHA hearing, limited his testimony to comments "on the complexity of her ability to think." He explained:

Now, I'm aware that my examination was some six or seven years later, but in cases of mental deficiency, one would expect that there wouldn't be much change one way or the other.

So that I gather that if anything, her schizophrenia might have improved somewhat, but not the mental deficiency.

He testified further:

I found Trina to be a rather large person, who looked her age, had extremely large hands.

I explained the purpose of my examination, and then asked her the date, and she said it was February, 1981, which was an error of two years.

I asked her if she was sure about that, and she said yes, she was pretty sure.

I asked her to add three and two, and she said four. She said this rapidly, without any concern about error. I asked her to subtract seven from ten, and she said seventeen.

I asked her how far it was from Muncy to Delaware County, and she didn't know. I asked her how she liked being at Delaware County Prison, and she said she didn't like being behind bars instead of a door.

And when I asked her why there were bars there or what she thought the reason was, she said, I guess they think we're animals. She thought the prison guards were trying to hurt her.

I asked her who her attorney was, and she said she didn't know. I told her, I jotted down the time of my telling her and that was five minutes after two.

At 2:07 I asked her who her attorney was, and she said, well, it was an odd name. So I told her again that it was Joseph Branca. And then at 2:17, ten minutes later, I asked her who Joseph Branca was, and she said she didn't remember.

To summarize the interview, I would say that if one doesn't listen carefully to what Trina says, it almost makes sense, but if one asks her a question and then carefully considers the answer, it makes no sense at all.

That she's willing to say those things which make her appear to be bright, or at least not to be retarded, but she doesn't consider the consequences of the meaning of what she says.

I asked her, for instance, where she would go if she were discharged from prison, and she said she would live with her sister.

And yet she hadn't gotten her sister's permission to live with her, hadn't been in communication with her sister, doesn't know if her sister is married.

She expressed some paranoid thinking.

She said she didn't like being around these people, that they look at her, that they're after her, felt that people were laughing at her.

I also interviewed Barbara Worack, who is a counselor at the

evidence Defendant's position does not rise above a mere allegation." While we sympathize with the lower court's predicament, we believe that the inquiry cannot end there.

■ Admittedly, difficulties attend the court's attempt to determine retrospectively an accused's competence to stand trial. *See Pate v. Robinson,* 383 U.S. at 387, 86 S.Ct. at 843; *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Where, as here, years separate the trial and the challenge, the difficulties may be insurmountable. In *Commonwealth v. Dimitris,* for example, Judge Spaeth for the Court *en banc* wrote: "To hold a hearing now [1977] on the question of appellant's competency to stand trial in 1973 would not be sufficient safeguard of his due process rights." 247 Pa.Super. 486, 493–494 n. 6, 372 A.2d 930, 933 n. 6 (1977); *compare Commonwealth v. Hunt,* 259 Pa.Super. 1, 12 n. 13, 393 A.2d 686, 691 n. 13 (1978) (plurality opinion) (remand for evidentiary hearing after passage of five years where the record contained four psychiatric reports written at or about the time of trial). This Court has addressed those difficulties. If the record initially reveals serious doubts about a defendant's competency, the reviewing court will proceed to determine whether the record conclusively establishes the accused's incompetency. Where the record does not permit such a judgment, the court will order a remand for an evidentiary hearing or, in unique circumstances where a remand hearing would not satisfy the demands of due process, grant a new trial. See *Commonwealth v. Megella,* 268 Pa.Super. 316, 325, 408 A.2d 483, 488 (1979) (Cercone, J., concurring) and cases cited therein.

The psychiatric reports relied on in this case do not appear of record. From testimony at the PCHA hearing, we deduce that there exist a social history from Allentown State Hospital dated January, 1973, summaries of her condi-

prison, and who had gotten to know Trina fairly well. And Miss Worack agreed with me that Trina was not making good sense. I think that summarizes my interview.

Q Doctor, in your opinion, would it be fair to characterize Trina as simplistic?

A Yes, I, I think that goes along with being retarded. I think a synonym for retarded is often simple-minded.

tion from Allentown State Hospital dated September 19 and September 24, 1974; a school summary dated April 28, 1975; a report from the Mental Health Institute for Children at Allentown State Hospital dated June 27, 1973; progress notes from Crozer-Chester Mental Health Center dated September, 1975 and December, 1975; a summary from Child Care Center of Delaware County, for the period June, 1975, and September, 1976, which included a psychiatric evaluation dated December 10, 1975, and a psychological examination dated August 25, 1976; a discharge summary from Eastern State School dated November 23, 1976, which included a psychological examination by Signe Larson, dated October 4, 1976; a psychiatric evaluation of Dr. Fong dated September 14, 1976; and another by Dr. Fong dated November 30, 1976; a report of a mental health hearing by Dr. Barry, dated December 3, 1976; a discharge summary from Norristown State Hospital dated January 16, 1977; a psychiatric evaluation done by Divine Providence Hospital in Williamsport, covering the period August 3 to 30, 1977; and a psychological evaluation by Muncy State Prison dated September 11, 1979.

Denied access to those reports, we turn to the facts of the case. Appellant has presented evidence which raises serious doubts about her competency at the time of trial. The fire occurred on August 29, 1976. Appellant had spent 2½ of the preceding 4 years as a patient undergoing treatment for psychological disorders. She left the institution against the advice of a doctor who felt appellant was "too compulsive and not able to control herself." Following her arrest September 3, 1976, appellant was evaluated at the request of prison authorities. The court-appointed psychiatrist, Dr. John Fong, superintendent of Haverford State Hospital, found the girl incompetent to stand trial. She was placed in the Eastern State School and Hospital. There she was treated, tested and again found incompetent to stand trial. On December 3, 1976, a second psychiatrist, Dr. Theodore J. Barry, also of Haverford State Hospital, examined appellant and diagnosed her condition as chronic undifferentiated

schizophrenia. He recommended she be hospitalized. The girl was committed to Norristown State Hospital. Two weeks after appellant's arrival at Norristown, the staff of that institution found her competent to stand trial.

■ More than two months later, the matter proceeded to trial without objection.[2]

In the present case it appears from the trial judge's opinion that he relied on the conclusions reached by the staff of Norristown State Hospital.[3] He fails to explain, however, what facts gave rise to these conclusions or even what standard the staff applied. None of the staff members testified nor were any of their reports made part of the record. On review, we are unable to come to a final judgment as to the sufficiency of the last examination. *See Commonwealth v. Hunt*, 259 Pa.Super. at 11 n. 10, 393 A.2d at 691 n. 10 (psychiatrist's report probative, but not dispositive, on question of appellant's competence); *Commonwealth v. Savage*, 270 Pa.Super. 388, 411 A.2d 774 (1979) (per Cirillo, J.).[4]

2. Counsel, in receipt of conflicting conclusions, failed to challenge the finding of competency either during the two-plus months from that last determination until trial or at the trial itself. At the PCHA hearing, counsel offered the excuse that he was under the impression appellant's family lacked funds to pay for an evaluation. We would direct his attention to § 7402 of the Mental Health Procedures Act. By statute, a defendant who has substantial objection to the conclusions reached by the court-appointed psychiatrist is entitled to obtain, at county cost, a psychiatrist of her own selection. 50 P.S. § 7402(f).

3. The Honorable Howard F. Reed, Jr., presided over both the trial and the PCHA hearing.

4. As Judge Spaeth explained in *Commonwealth v. Smith*, 227 Pa.Super. 355, 367, 324 A.2d 483, 489 (1974):

To the extent that psychiatric testimony is utilized, however, it should be descriptive of the defendant's condition rather than conclusory. Like criminal responsibility, incompetency is a legal question; the ultimate responsibility for its determination must rest in a judicial rather than a medical authority. In relying on conclusory psychiatric testimony, often expressed in the same terms as the ultimate incompetency question, the courts shift responsibility for the determination to psychiatrists who have no special ability to decide the legal issue. Indeed, there is repeated evidence that psychiatrists often misunderstand the test of incompetency and confuse it with the test of criminal responsibility. Medical opinion

■ The lower court failed to make findings of fact regarding the girl's competency. With neither reports nor findings of fact on record, we are constrained to remand this matter. We do so reluctantly, mindful of the interests of judicial economy in the administration of criminal justice. Here, however, the deficiencies of the record impel the result.

On remand, the court is directed to hold an evidentiary hearing limited to the question of appellant's competence to stand trial in March of 1977. If the court below concludes that she was competent at the time of trial, the judgment of sentence as modified will be upheld. *See, infra,* pp. 328–329. If appellant is found to have been incompetent, judgment of sentence is reversed and a new trial is ordered.

We find no merit to appellant's remaining claims.

■ Appellant next argues that trial counsel was ineffective for failing to present the defense of diminished capacity. It is true appellant was entitled to present evidence that she suffered from a mental defect which rendered her incapable of forming the specific intent to kill. *Commonwealth v. Walzack,* 486 Pa. 210, 360 A.2d 914 (1976). Under the Crimes Code, negation of a specific intent to kill would have reduced the crime to murder of the third degree. *See*

about the defendant's condition should be only one of the factors relevant to the determination. A defendant's abilities must be measured against the specific demands trial will make upon him, and psychiatrists have little familiarity with either trial procedure or the complexities of a particular indictment.
*Quoting,* Note, *Incompetency to Stand Trial,* 81 Harv.L.Rev. 454, 470 (1967).

Further, the report relied upon by the lower court was issued over two months before trial. *See Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (two-three months too long); *Commonwealth v. Hunt,* 259 Pa.Super. 1, 393 A.2d 686 (court's reliance on report made more than five months before trial held unwarranted); *but see Commonwealth v. Pifer,* 284 Pa.Super. 170, 178, 425 A.2d 757, 761 (1981) (a lapse of two months held not *per se* too long where record established defendant's competency); *compare Commonwealth v. Marshall,* 456 Pa. 313, 318 A.2d 724 (1974) (Supreme Court remanded for evidentiary hearing where second and third psychiatric examinations, eight months before and one month after second trial, raised serious doubts about appellant's competency).

18 Pa.C.S. § 2502. Dr. Mark Shulkin, the court-appointed psychiatrist, testified that on the date of the fire, August 29, 1976, appellant lacked the capacity to form the specific intent to kill. Her IQ is listed at 69 or 70. Psychological tests conducted shortly after the fire indicated that appellant's thoughts are little more than animal instinct with no consideration of circumstances and no thinking beforehand.

Appellant was convicted, however, of second, not first, degree murder. Under the then-operative statute, "[a] criminal homicide constitutes murder of the second degree when the death of the victim occurred while defendant was engaged as a principal or accomplice in the perpetration of a felony." [5] 18 Pa.C.S. § 2502(b). The felony here is arson. 18 Pa.C.S. § 3301, 1972, Dec. 6, P.L. 1482, No. 334, § 1, effective June 6, 1973; amended 1982, April 29, P.L. 363, No. 101, § 1, effective in 90 days; 1982, Dec. 7, P.L. 811, No. 227, § 1, effective in 60 days. Conviction for arson will stand on proof that an accused intended to set a fire and damage an inhabited building. *See* § 3301(b)(1); *Commonwealth v. Trafford*, 312 Pa.Super. 578, 581, 459 A.2d 373, 374 (1983) (to convict a person of arson, prosecution must establish beyond a reasonable doubt that there was a fire willfully and maliciously set by defendant). Murder follows as felony-murder; the killing need not be intentional. *Commonwealth v. Tarver*, 493 Pa.Super. 320, 426 A.2d 569 (1981). For the crime, the statute mandates a term of life imprisonment. *See* 18 Pa.C.S. § 1102(b).

Nothing in the record suggests appellant lacked capacity to form the requisite intent for arson. Dr. Shulkin testified that "she would be able to form the general intent to enter the house, to destroy this property . . . ." "[I]n view of her having set herself on fire and suffered really serious injuries," Shulkin concluded, "she would know that setting a fire could cause serious damage to people." Trial counsel

---

5. The statute was amended in 1978 to substitute "it is committed" for "the death of the victim occurred." Act of April 28, 1978, P.L. 84, No. 39, § 1 (effective in 60 days).

cannot be deemed ineffective for failing to advance the diminished capacity defense.

■ Appellant challenges, as *pro forma*, trial counsel's representation at the transfer hearing. The Commonwealth sought to have appellant, then age fourteen, certified to be tried as an adult on the subordinate charges. Original jurisdiction for these charges, voluntary and involuntary manslaughter, recklessly endangering another person, causing or risking a catastrophe, criminal mischief, burglary and arson, lay in the juvenile court. The Commonwealth, as the party objecting to the juvenile court's jurisdiction, had the burden of establishing that appellant was not amenable to treatment, supervision or rehabilitation as a juvenile, that she was not committable to an institution for the mentally retarded or mentally ill and that the interests of the community required that the child be placed under legal restraint or discipline. 11 P.S. § 50–325, repealed and reenacted as 42 Pa.C.S. § 6355. *See Commonwealth v. Greiner*, 479 Pa. 364, 370, 388 A.2d 698, 700 (1978). To that end, the Commonwealth presented witnesses; defense counsel offered none. Counsel limited his argument to two statements. He stated his belief that appellant needed a program of rehabilitation; he noted that the fact that appellant was charged with murder served to remove only the charge of murder from the juvenile court's jurisdiction. The court listened, then rendered its decision certifying appellant for trial as an adult on all charges in conjunction with the charge of murder.

■ We note the shortcomings of trial counsel's representation at the certification hearing. Counsel failed to introduce the fact of appellant's diminished mental capacity—an IQ of 69 and a diagnosis of undifferentiated schizophrenia. At no time did he petition for transfer of the murder charges to the juvenile side of the court of common pleas. *See* 11 P.S. § 50–303, repealed and reenacted as 42 Pa.C.S. § 6322; *Commonwealth v. Keefer*, 470 Pa. 142, 147 n. 7, 367 A.2d 1082, 1084 n. 7 (1976), *cert. denied Keefer v. Pennsylvania*, 434 U.S. 1009, 98 S.Ct. 717, 54 L.Ed.2d 751

(1978), *reh. denied* 435 U.S. 938, 98 S.Ct. 1514, 55 L.Ed.2d 534 (1978). While we do not condone counsel's actions, we conclude that assistance was not ineffective under the standards enunciated in *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967).

■ The guidelines for certification under the Juvenile Act emphasize the child's amenability to care "as a juvenile through available facilities." 11 P.S. § 50–325, repealed and reenacted as 42 Pa.C.S. § 6355. In appellant's case, there were no facilities available for a child charged with murder by arson. As Judge Reed explained:

> Both the Court and the Delaware County Juvenile Court exerted substantial energies in an effort to place the Defendant, which efforts extended as far as Canada. However, the nature of the charges, specifically *Murder with Arson,* closed all regular facilities to the Defendant ... Nothing more could have been done for her in the Juvenile System at that time.

The juvenile court, in the first instance, had no jurisdiction over the murder counts. Arson and the lesser-related charges were part and parcel of those charges. Given the relation of the charges, we find no error in the hearing court's decision to certify appellant to be tried as an adult on all charges. *See Keefer,* 470 Pa. at 147–148, 367 A.2d at 1085. Appellant's third claim must fall.

■ Appellant last argues that trial counsel erred in failing to request the so-called "mercy charge." In every prosecution for murder, a jury may return, and the court must accept, a verdict of voluntary manslaughter—even in the absence of any evidence of voluntary manslaughter. *See Commonwealth v. Jones (a/k/a Dupree),* 473 Pa. 211, 219 n. 5, 373 A.2d 1338, 1341 n. 5 (1977) (Roberts, J., concurring). Appellant, as a matter of law, was entitled to an instruction on voluntary manslaughter. *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974) (plurality opinion).

 Although trial counsel failed to request the charge, the court did instruct the jury on voluntary manslaughter. The PCHA court concluded that the question of ineffectiveness was mooted by the fact that the trial court did give the voluntary manslaughter charge. Appellant contends that the charge fails for failure to alert the jury that "pursuant to its inherent mercy dispensing power, [it] may from sympathy or awareness of extenuating circumstances, find a defendant guilty of a lesser offense than the evidence could support." *Jones (a/k/a Dupree)*, 473 Pa. at 218–219, 373 A.2d at 1341. The charge, in pertinent part, reads:

> However, if you do not find the Defendant guilty of murder under the instructions we have just given you, you may nevertheless find her guilty of voluntary manslaughter if you are satisfied beyond a reasonable doubt that without justification she caused the death of either Brian or Derrick Harvey or both, with an intent to kill or inflict great bodily harm.

We find no merit to appellant's final claim.

 Appellant has failed to challenge the legality of the sentences imposed consecutive to her life terms for murder. A question as to the legality of the sentence, however, is never waived. *Commonwealth v. Ford*, 315 Pa.Super. 281, 296, 461 A.2d 1281, 1288 (1983) (and cases cited therein). We have addressed the issue and conclude that judgment of sentence was improperly entered on the non-murder charges. Mindful that the court on remand may find appellant was competent to stand trial in March of 1977, we vacate the sentences entered on those charges.

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact that the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), quoted in *Commonwealth v. Tarver*, 493 Pa. 320, 325, 426 A.2d 569, 572 (1981). In addition to two counts of murder in the second degree, appellant's sentence

reflects convictions for burglary, arson, causing a catastrophe and recklessly endangering another person. Because we find no legislative intent to cumulate the punishments, we vacate the sentence imposed on the subordinate offenses. *See Commonwealth v. Bostic,* 500 Pa. 345, 456 A.2d 1320 (1983) (convictions for aggravated robbery and committing a crime of violence while in possession of a firearm do not merge for the purposes of sentencing); *see also Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (Double Jeopardy clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended).

Conviction for arson under the then-operative statute required proof that appellant had intentionally started a fire and thereby recklessly placed another person in danger of death or bodily injury. 18 Pa.C.S. § 3301 (amended 1982). Risking catastrophe followed on proof that the girl recklessly created a risk of catastrophe in employment of fire. 18 Pa.C.S. § 3302(b). Causing catastrophe rested on a showing that she recklessly or intentionally or knowingly caused a catastrophe by fire. 18 Pa.C.S. § 3302(a). And conviction for recklessly endangering another person will stand where appellant has recklessly engaged in conduct which placed another person in danger of death or serious bodily injury. 18 Pa.C.S. § 2705. The three statutes address, with varying degrees of specificity, the same act. Convictions on the lesser counts should have merged with the arson conviction for the purposes of sentencing. *Cf. Commonwealth v. Williams,* 290 Pa.Super. 209, 434 A.2d 717 (1981) (recklessly endangering merges with aggravated assault).

Either of the felony counts, burglary or arson, could support the murder convictions under a felony-murder theory. *See, e.g., Commonwealth v. Maddox,* 307 Pa.Super. 524, 453 A.2d 1010 (1982) (burglary merges with felony-murder). On the facts of the case, the burglary was a necessary first step to the arson felony-murder. The State Police investigation revealed that the fire had been set in two separate locations in the first floor front room of the

house. From there it spread and engulfed the structure. The statute defines burglary as entering an occupied dwelling with intent to commit a crime therein. Here the crime was arson. As a result of the arson, two children died. Applying the *Blockburger* test, we conclude that the burglary and the arson were constituent offenses of the felony-murders. We therefore vacate the judgment of sentence entered at those counts.

Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.