J-A22038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANIL K. AGARWAL, | |
| Appellant | No. 2188 MDA 2014 |

Appeal from the Judgment of Sentence December 15, 2014
in the Court of Common Pleas of Schuylkill County
Criminal Division at No.: CP-54-CR-0000203-2014

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 17, 2015**

Appellant, Anil K. Agarwal, appeals from the judgment of sentence entered on December 15, 2014, following his jury conviction of attempted theft by deception, and insurance fraud.[1]  On appeal, Appellant challenges the sufficiency of the evidence and his competency to stand trial.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's February 23, 2015 decision, the October 22, 2014 notes of testimony, and our independent review of the certified record.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901, 3922, and 4117(a)(2), respectively.

The instant matter concerns the alleged burglary, on June 14, 2011, of a property located at 10-12 Market Street, Kelayres, Schuylkill County, Pennsylvania. Appellant claimed that the burglar had taken or damaged many valuable items, including but not limited to an antique piano, a king-size mattress, a queen-size mattress, custom-made silk clothing, jewelry, two expensive televisions, electronics, 200-hundred feet of fencing, a laptop computer, a copier, an all-in-one printer, two ladders, and power tools. (*See* N.T. Trial, 10/22/14, at 135-38, 144-45, 150-57). The lot at 10-12 Market Street consists of two houses at the front of the lot and a separate rear structure, alternately described as a very small house or an apartment. (*See id.* at 95, 105, 107). The incident involves this rear structure (apartment).

During the spring of 2011, Appellant was involved in a dispute with Mid-County Resources (Mid-County), who alleged to have purchased the entire lot at a tax sale. (*See id.* at 95). Appellant claimed his wife, who owns many properties in Pennsylvania and New Jersey, owned the lot. (*See id.* at 95, 121-22). Appellant is unemployed, but does assist his wife in managing the properties in both states. (*See id.* at 120-21). Appellant alternately stated that he lived in the apartment and that he did not reside

in it but sometimes stayed there overnight. (*See id.* 121, 129-31).[2] No one lived in the apartment in the winter of 2010-11, because there was no water service and pipes burst and flooded it. (*See id.* at 123-24). During the spring of 2011, third parties sometimes resided there. (*See id.* at 121-22, 196-97).

In April 2011, Paul Young, a property manager for Mid-County, went to inspect the lot. (*See id.* at 193-95, 198-200). He found the apartment to be in a terrible condition, containing garbage, dirty dishes, mouse droppings, mold, broken pipes, feces in the toilet, a leaking ceiling, and no running water. (*See id.* at 199). Young did not observe any of the valuables listed above in the apartment. (*See id.* at 205-09).

In June 2011, Young obtained permission from Kline Township to put a dumpster on the property for trash removal. (*See id.* at 200, 265). It is Mid-County's policy to save any items of value or in good condition. (*See id.* at 201, 215, 236-37). It throws away any items that are unsalvageable. (*See id.*). On the morning of June 14, 2011, Young, together with two of his employees, Evan Lindermuth and Joe Plummer, went to the apartment to clean it out. (*See id.* at 214, 234-35). Young found the apartment to be in even worse shape than it had been in April. (*See id.* at 201-02).

---

[2] The evidence at trial demonstrated that Appellant did not reside at the apartment because he kept all of his cars in New Jersey and, in a recorded statement, he stated that he lived in New Jersey. (*See id.* at 138-40).

The men noted that the outside and rear porch were in poor condition. (*See id.* at 215-16). All three men claimed the apartment had a broken window, was filthy, smelled so badly that they had to work wearing masks, and had no water or electricity. (*See id.* at 215-18, 239, 241, 252). The toilet contained feces and there was rotting food in the refrigerator. (*See id.*). More rotting food, papers, and soiled clothing covered the floor. (*See id.* at 209-10, 224, 240). While there were two televisions in the apartment, they were of the old tube-type. (*See id.* at 206, 223). There was a piano, but the men ascertained that it was not playable, rotting and filled with garbage. (*See id.* at 208-09, 218, 227, 242-43). They did not see any of the other items listed above in the apartment. (*See id.* at 205-09, 225, 228-29, 247). There was so much trash in the apartment that it over-filled the dumpster and the men did not find any items that were worth salvaging. (*See id.* at 228, 238, 241-42, 250, 253-54). Within a week of cleaning out the apartment, Lindermuth and Plummer made separate lists of the items in the apartment and their condition; those lists described a filthy, uninhabitable apartment filled with garbage, cheap damaged furniture, soiled clothing and linens, and rotting food. (*See id.* at 221-30; 244-54).

On June 14, 2011, Appellant contacted Chief John Petrilla of the Kline Township Police Department and reported that a third party left the apartment in the morning and returned to discover that someone had burglarized it. (*See id.* at 126, 261, 263). The next day, Chief Petrilla met

with Appellant and told him that Mid-County had cleaned out the apartment and a burglary had not occurred. (*See id.* at 264). Chief Petrilla told Appellant that he could pursue a civil action against Mid-County if he wished. (*See id.* at 265). During that meeting, Appellant gave Chief Petrilla an itemized list, with estimated values, of the stolen property. (*See id.* at 264). Appellant claimed the items were worth in excess of $120,000.00. (*See id.* at 135, 157-59).

On June 20, 2011, Chief Petrilla again met with Appellant. (*See id.* at 266). At that time, he observed that several of the items that Appellant listed as stolen were sitting in the apartment. (*See id.* at 269-72). Chief Petrilla pointed them out to Appellant, who explained that, although the items were on the list of stolen property, the burglar had broken back into the apartment and returned them. (*See id.* at 270-71). Chief Petrilla confiscated the items and the Commonwealth entered them into evidence at trial. (*See id.* at 269-74).

On the day of the alleged burglary, Appellant filed a claim with Liberty Mutual Insurance Company, under his homeowner's insurance policy, for the value of the stolen property. (*See id.* at 96). On June 23, 2011, Richard Stinger, an investigator from Liberty Mutual, met with him at the apartment to discuss the claim. (*See id.* at 103). Chief Petrilla had forwarded the list of stolen property to Liberty Mutual. (*See id.* at 175). Stinger stated that the lawn was overgrown and the rear deck of the apartment was covered

with junk. (*See id.* at 106). Further, the apartment stank, was dirty, and there was no water service. (*See id.* at 110). It was also infested with insects, so Stinger had to conduct the interview outside. (*See id.* at 112).

During the recorded interview, Appellant went over the list with Stinger and confirmed its accuracy. (*See id.* at 111, 132-34). He could not produce any documents that confirmed either the existence of the items or his ownership of them. (*See id.* at 157-58). Stinger had suspicions regarding the claim because he believed the property was too small to hold that many items and the quality of the belongings in the home was not indicative of the values that Appellant claimed for the missing things. (*See id.* 160-62). Liberty Mutual ultimately denied coverage and alerted the Pennsylvania Attorney General of possible fraud in connection with the incident. (*See id.* at 168, 172, 189-90).

On March 26, 2014, the Commonwealth filed a criminal information charging Appellant with the above-listed offenses. A trial took place on October 22 and 23, 2014. At trial, Appellant waived his right to testify on his own behalf. During the waiver colloquy, the following exchange occurred.

> The Court: Do you have any mental or emotional health issues of any nature that may impair your ability to understand the proceedings and your ability to make decisions?
>
> [Appellant]: No, but I have a—like a syndrome that if I get tired because I am like half brain dead—
>
> The Court: You are what?

[Appellant]: Half brain dead. Like this side of the brain is dead.

* * *

[Appellant]: Yeah. So I was paralyzed and all that like, you know, for a few months and all that. So I have to use this side of brain to do the function of this side of brain. So if I am like somewhere like prolonged, like five, six hours, more than that, then I cannot understand right way, like what is going on.

The Court: Okay. Are you—do you have any mental or emotional health or physical issues that you believe is impairing your ability right now—

[Appellant]: No.

* * *

The Court: Now let's talk about what he mentioned about his brain.

Mr. Brennan [defense counsel]: That's—

The Court: Have you detected anything with regards to any physical problem or anything with regard to—and I don't know quite how to say it—but the way a mind would work as far as responding to your questions and your discussions that would indicate to you that for some reason he's not able to make a competent decision because of what he just brought up about his brain?

Mr. Brennan: Yes, well, Your Honor, let me state this is the first I heard of that, by the way, the statement about his brain.

But let me state on the record, Your Honor, in addition to my trial practice, I also do wills and estates. I regularly meet with people who are suffering from maybe dementia or slowing down. I'm generally familiar with that, although I'm not an expert; but I'm familiar with meeting with elderly clients dealing with someone who may not be altogether able to make decisions.

I have seen none of those symptoms as a lay person would

notice them in my client. Every time I called him or talked to him, he seemed very much aware of the time and place, the case that was going on. He's very well-educated, Your Honor.

The only medical condition you saw during the trial were—because of some medication, he has to go to the bathroom a lot. Other than that, Judge, I have not seen anything that would lead me to believe that there is a mental issue here. Had there been, Your Honor, and quite honestly, I would have petitioned the Court for an examination; but—

The Court: Okay.

Mr. Brennan: —I don't see that.

(N.T. Trial, 10/23/15, at 313-14, 320-21). On October 23, 2014, the jury found Appellant guilty of all charges.

On December 15, 2014, the trial court sentenced Appellant to a term of incarceration of not less than eleven days nor more than twenty-four months less one day to be followed by a three-year term of probation. At sentencing, the parties discussed whether Appellant might have some mental health issues; however, the trial court agreed with the Commonwealth that Appellant was competent. (**See** N.T. Sentencing, 12/15/14, at 22, 28, 31, 37). Appellant did not file any post-sentence motions.

On December 24, 2014, Appellant filed a timely notice of appeal. On December 29, 2014, the trial court ordered Appellant to file a concise statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on January 23, 2015. On February 23, 2015, the trial court filed an opinion. **See** Pa.R.A.P. 1925(a).

Appellant raises the following questions for our review:

I.    Whether the judgment of conviction must be vacated because the evidence was not sufficient, as to each element to support a conviction for attempt to commit theft by deception[?]

II.   Whether the judgment of conviction must be vacated because the evidence was not sufficient as to each element to support a conviction for insurance fraud[?]

III.  Whether the convictions must be vacated because [Appellant] was deprived of due process where his competency to formulate criminal intent, stand trial, and/or waive his Fifth Amendment Right was not properly considered and assessed[?]

(Appellant's Brief, at 2-3).

In his first two issues, Appellant claims the evidence was insufficient to sustain his conviction. Specifically, Appellant claims that the Commonwealth failed to prove he acted with intent. (*See id.* at 10). We disagree.

Our standard of review for sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, **when viewed in a light most favorable to the Commonwealth as verdict winner**, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact

finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012) (citation omitted) (emphasis added).

A defendant is guilty of an attempt if "with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a). A defendant commits the crime of theft by deception when "he intentionally obtains or withholds property of another by deception." 18 Pa.C.S.A. § 3922(a). We define deception as intentionally: (1) creating or reinforcing a false impression; (2) preventing "another from acquiring information which would affect his judgment of a transaction;" or (3) failing "to correct a false impression which the deceiver previously created or reinforced[.]" 18 Pa.C.S.A. § 3922(a)(1)-(3). The crime is finished at the time the defendant communicates the intentional deception to the property owner. ***See Commonwealth v. Pappas***, 845 A.2d 829, 839 (Pa. Super. 2004), *appeal denied*, 862 A.2d 1254 (Pa. 2004).

Here, while Appellant did not obtain the property at issue, namely the proceeds from the insurance claim, he took a "substantial step" towards

- 10 -

obtaining it.[3]  On June 14, 2011, Appellant filed a claim with Liberty Mutual for the property allegedly stolen from the apartment.  He submitted a list to Chief Petrilla of the missing property with estimated values for each item. Chief Petrilla forwarded that list to Liberty Mutual and Appellant confirmed its accuracy during his interview with Richard Stinger.  He claimed that the value of the missing items was in excess of $120,000.00.  Viewing this evidence, as we must, in the light most favorable to the Commonwealth, it shows that Appellant took a substantial step towards obtaining Liberty Mutual's money by filing an insurance claim and providing a written list of the missing items and their estimated values to Liberty Mutual.

The evidence at trial was also sufficient to show the use of deception. Chief Petrilla saw several of the allegedly stolen things in the apartment

---

[3] We note that Appellant erroneously views the evidence in the light most favorable to him.  (**See** Appellant's Brief, at 11-19).  Further, we take issue with Appellant's claim that the trial court questioned the sufficiency of evidence at sentencing.  (**See id.** at 18-19).  Appellant takes the quoted statements out-of-context.  (**See id.**).  A reading of that entire portion of the sentencing transcript shows that the trial court was commenting that Appellant's story was so bizarre and unbelievable that it indicated that he might have mental health problems.  (**See** N.T. Sentencing, 12/15/14 at 30-31).  Lastly, we note that, to the extent that Appellant claims that the evidence was insufficient to sustain his convictions because of inconsistencies in the testimony, (**see** Appellant's Brief, at 17-18), such a claim goes to the weight, not sufficiency, of the evidence.  **See Commonwealth v. Johnson**, 910 A.2d 60, 65 (Pa. Super. 2006), *appeal denied*, 923 A.2d 1173 (Pa. 2007).  Appellant did not raise a weight of the evidence claim in his statement of the questions involved (**see** Appellant's Brief, at 2), nor could he because he did not preserve such a claim below. **See Commonwealth v. Burkett**, 830 A.2d 1034, 1036 (Pa. Super. 2003).

approximately one week after the alleged theft; Appellant admitted that he had listed those items on the list but claimed that the thief had returned them. Further, he overstated, to the point of absurdity, the value of the other articles, for instance claiming that a broken and rotting piano was worth $47,000.00. (*See* N.T. Trial, 10/22/14, at 136-37). The evidence at trial also demonstrated that, both in April 2011 and on the date of the alleged burglary, with the exception of the rotting piano, many of the expensive pieces listed by Appellant were not in the apartment. Moreover, items such as clothing were soiled and covered in garbage, and the televisions were old tube-type sets, not the expensive ones Appellant claimed were missing. Lastly, while there were some minor discrepancies between the lists prepared by Lindermuth and Plummer, nothing corroborated Appellant's claims of an apartment filled with valuable possessions.

Appellant argues that the values were mere estimates and that an insurance company often disputes property values, thus the Commonwealth failed to show intent to deceive. (*See* Appellant's Brief, at 13-14). However, based upon the testimony of Stinger, Young, Lindermuth and Plummer regarding the condition of the apartment and the things therein, the jury could easily conclude that Appellant grossly over-estimated values of the articles. In combination with his attempt to claim money for pieces that were present in the apartment after the alleged theft, the evidence is

more than sufficient to demonstrate that Appellant attempted to deceive the insurance company.  *See Commonwealth v. Sanchez*, 848 A.2d 977, 983 (Pa. Super. 2004) (evidence that defendant filed false insurance claim and "reinforced the false impression" in claim is sufficient to prove theft by deception.).   Appellant's first claim lacks merit.

Appellant's second issue maintains that the evidence was insufficient to sustain his conviction for insurance fraud.  (**See** Appellant's Brief, at 16-19).

We define the offense of insurance fraud as an act by a person who:

> Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa.C.S.A. § 4117(a)(2).

Here, the evidence demonstrated that Appellant presented a statement forming or in support of an insurance claim by filing a claim with Liberty Mutual regarding the alleged theft of personal property at the apartment.  Appellant gave the police a list of the missing items and their estimated values, the police forwarded the list to Liberty Mutual, and he affirmed the accuracy of that list, both as to the things taken and as to their values, in his recorded interview with Stinger.  That estimate totaled over $120,000.00.

As discussed in detail above, Appellant's recorded statement demonstrated that the apartment was uninhabited in the winter of 2010-11, because of flooding and lack of water service. Further, the evidence showed that Appellant did not reside in the apartment but merely stayed there when working on properties in the area, and that various third parties sometimes resided in the apartment. Moreover, the evidence demonstrated that Appellant was still in possession of some of the pieces on the list a week after the theft. In addition, the evidence showed that many of the articles allegedly stolen were not in the apartment in April 2011 and not there on the day of the alleged theft. The testimony of all of the Commonwealth's witnesses showed that the apartment was in deplorable condition, the items in the apartment were cheap, broken, soiled and otherwise valueless. Lastly, the evidence revealed that Appellant over-stated the value of the articles to the point of absurdity. The list of missing things and their accompanying valuations was material because it formed the basis of Appellant's claim for compensation.

It is settled that the Commonwealth may meet its burden of proof based entirely on circumstantial evidence. *See Tarach*, *supra*; *see also Commonwealth v. Vargas*, 108 A.3d 858, 868-69 (Pa. Super. 2014). Further, the jury may infer intent from the defendant's conduct. *See Vargas, supra* at 869 (inferring intent to possess narcotics with intent to deliver); *see also Commonwealth v. Buford*, 101 A.3d 1182, 1186 (Pa.

Super. 2015), *appeal denied*, 114 A.3d 415 (Pa. 2015) (intent to kill can be inferred from use of deadly weapon on vital part of body). Based on the evidence discussed above, the jury could properly infer that Appellant, in an attempt to obtain money he was not entitled to from the insurance company, intentionally provided a false list to Liberty Mutual seeking proceeds for items that were still in his possession and substantially over-inflating the values of other items, in an attempt to defraud it. Appellant's second claim lacks merit.

In his final claim, Appellant argues that he was deprived of a fair trial because he was incompetent to participate in a criminal proceeding. (**See** Appellant's Brief, at 20-24). Specifically, he alleges that issues regarding his mental health arose during the trial and at sentencing but no one ever requested a competency evaluation. (**See id.** at 20). Appellant waived his claim.

> A defendant is presumed to be competent to stand trial. Thus, the burden is on the defendant to prove, by a preponderance of the evidence, that he was incompetent to stand trial. In order to prove that he was incompetent, the defendant must establish that he was either unable to understand the nature of the proceedings against him or unable to participate in his own defense.

> Stated otherwise, the relevant question in a competency determination is whether the defendant has sufficient ability at the pertinent time to consult with counsel with a reasonable degree of rational understanding, and to have a rational as well as a factual understanding of the proceedings.

We extend great deference to the trial judge's determination as to competency because he or she had the opportunity to observe directly a defendant's behavior. Furthermore, we note that it is a proper exercise of the trial court's discretion to accept one expert witness's opinion over that of a conflicting opinion where the record adequately supports such a resolution.

*Commonwealth v. Flor*, 998 A.2d 606, 617-18 (Pa. 2010), *cert. denied*, 131 S.Ct. 2102 (2011) (citation omitted).

In his brief, Appellant admits that he did not preserve this issue at trial. (*See id.* at 20 n.8). Yet, Appellant argues that this Court held in *Commonwealth v. Megella*, 408 A.2d 483, 485 (Pa. Super. 1979), that the failure to raise the issue of a defendant's competency at trial, does not waive the matter on appeal. (*See* Appellant's Brief, at 20 n.8). However, in *Megella*, this Court found that the defendant had preserved the issue by raising and litigating it in post-trial motions. *See Megella*, *supra* at 485. Here, Appellant did not file a post-trial motion and did not litigate the question below. Rather, Appellant raised it for the first time in his Rule 1925(b) statement. An appellant cannot raise matters for the first time in a Rule 1925(b) statement. *See Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa. Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived). Further, an appellant cannot raise a subject for the first time on appeal. *See Commonwealth v. Hanford*, 937 A.2d 1094, 1098 n.3 (Pa. Super. 2007), *appeal denied*, 956 A.2d 432 (Pa. 2008) (new

legal theories cannot be raised for first time on appeal); Pa.R.A.P. 302(a). Thus, we find that Appellant waived this claim.

Moreover, in effect, Appellant is claiming that trial counsel was ineffective for failing to request a competency hearing.[4] (**See** Appellant's Brief, at 20-24). However, Appellant must raise claims of ineffective assistance of counsel on collateral review. **See Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013). Therefore, to the extent that Appellant is claiming that he received ineffective assistance of trial counsel, we dismiss any such claim without prejudice for Appellant to seek collateral review under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, in accordance with the Pennsylvania Supreme Court's opinion in **Commonwealth v. Grant**, 813 A.2d 726, 737 (Pa. 2002). **See also Holmes**, **supra** at 576. Otherwise, Appellant's third claim is waived and does not merit relief.

Accordingly, for the reasons discussed above, we affirm the judgment of sentence.

---

[4] We note for clarity that mental health **is not** the equivalent (or a precondition of) competency to stand trial. Therefore, the mere assertion of mental health issues, particularly without any supporting medical opinion, does not establish incompetency to stand trial. The trial court properly treated the two issues separately. **See** 50 P.S. 7402(a); **see also Commonwealth v. Tyson**, 402 A.2d 995, 997 (Pa. 1979) ("Even though one has a history of mental illness that person may, at a given time, be competent to stand trial and may have been legally sane at the time of the commission of the crime.").

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/17/2015</u>